ELIZABETH WELLS, JOE CARSON WELLS, AND WES-- LEE WELLS, Appellants, *v*. BANK OF NEVADA, a Nevada Corporation, Special Administrator With the Will Annexed of the Estate of Joe Wesley Wells, Deceased, Respondent.

No. 7374

May 29, 1974                                     522 P.2d 1014

[Rehearing denied August 9, 1974]

*Carl F. Martillaro* and *Arthur J. Bayer, Jr.,* of Carson City, for Appellant Elizabeth Wells.

*John Tom Ross* and *Robert A. Grayson,* of Carson City, for Appellants Joe Carson Wells and Weslee Wells.

*James E. Ordowski,* of Las Vegas, for Respondent Bank of Nevada.

*Guild, Hagen & Clark, Ltd.,* of Reno, for Howard A. Wells, R. C. Wells, Wells Cargo, Inc., and First National Bank of Nevada.

## OPINION

By the Court, THOMPSON, C. J.:

Joe Wells died May 18, 1967. This action, commenced by The Bank of Nevada as administrator with the will annexed of his estate, seeks a court declaration of the validity of an agreement entered into on June 30, 1960, between Joe Wells, his brothers Howard and Robert, the family corporation Wells Cargo, Inc., which Joe, Howard and Robert managed and controlled, and the First National Bank of Nevada. The district court entered judgment declaring that agreement to be valid and enforceable. Moreover, the court found that Elizabeth Wells, the surviving wife to whom Joe had been married for eleven years before the agreement was entered into, did not have a community interest in the shares of stock of Wells Cargo held by Joe at his death. Elizabeth Wells, the surviving wife, and Weslee Wells and Joe Carson Wells, a surviving daughter and son respectively, have appealed therefrom, requesting that we set aside the judgment thus entered and void the agreement of June 30, 1960.

The agreement in issue was designed to provide the terms upon which the family corporation, Wells Cargo, was to acquire the shares of stock held by one of the brothers in the

event of his death and thereby maintain a continuity of management of the corporation. In brief, the corporation was to pay the estate of the deceased brother 125 percent of the book value of the shares of such deceased brother, and designated a schedule for such payment. Since the death of Joe, the corporation has met the terms of that agreement.

When the agreement was made, Joe and Howard Wells each held 11,745.25 shares of Wells Cargo, and Robert owned 2,532.07 shares. The agreement recited that Joe held his shares as separate property, and that Howard and Robert held theirs as community property. Consequently, the wives of Howard and Robert waived any objection to the execution of the agreement by their spouses and to its eventual consummation. Such a waiver was not secured from Elizabeth Wells to whom Joe had been married since January 28, 1949, as he believed his stock ownership in Wells Cargo was his separate property.

Shares of stock in the corporation were never issued to Elizabeth Wells, Weslee Wells and Joe Carson Wells, the complaining appellants. Elizabeth Wells, as the surviving wife, contends that she enjoyed a community interest in the stock held by Joe at his death, and that one-half thereof belongs to her.[1] Moreover, she argues that, in any event, the June 30, 1960, agreement is void for several reasons which later will be mentioned. Weslee Wells and Joe Carson Wells join Elizabeth in this contention.

1.  The corporation was formed in January 1936 under the name of Wells, Inc., and thereafter engaged primarily in the business of trucking-transportation and construction. The articles of incorporation expressly authorized the company to purchase shares of its own capital stock so long as its capital was not impaired. Of course, such corporate power is statutorily authorized whether expressed in the articles or not.[2] In 1947, the name of the company was changed to Wells Cargo, Inc.

---

[1]NRS 123.250: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; . . . ."

[2]NRS 78.070: Subject to such limitations, if any, as may be contained in its certificate or articles of incorporation, or any amendment thereof, every corporation shall have the following powers:

"1.  . . . .

"2.  . . . .

"3.  To purchase, hold, sell and transfer shares of its own capital stock, and use therefor its capital, capital surplus, surplus, or other property or funds; provided: (a) that no corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation, . . . ."

The corporation experienced substantial growth. As of December 31, 1967, its total assets were listed at $10,030,033.66, and its total liabilities at $7,320,956.35. Much of that growth occurred after 1949 when Joe married Elizabeth and was, in part, due to his efforts on behalf of the company.

Joe owned the stock in question prior to his marriage and thus when he and Elizabeth were married, his stock interest in Wells Cargo was his separate property.[3] The issue therefore was the classification of the increase in value of his stock interest thereafter. The district court found that although Joe contributed in part to the corporate growth, his activity for the corporation was substantially reduced because of other business involvement and that "during the later years most of the increase in the stock's value must be ascribed to other sources." Moreover, the court noted that during their married life, Joe was paid $50,000 to $60,000 per year for services rendered to the corporation and received a large expense account. Consequently, the court ruled that "the community was fully compensated for the decedent's community labor through his annual salary and related benefits."

The judgment below was filed April 27, 1973. At that time, Lake v. Bender, 18 Nev. 361, 4 P. 711 (1894), was viable. The court there declared that if profits from separate property come mainly from the property rather than from the joint efforts of the husband and wife, or either of them, they belong to the owner of the property, although the labor and skill of one or both may have been given to the business. On the other hand, if profits come mainly from the efforts or skill of one or both, they belong to the community.

Pending this appeal we decided Johnson v. Johnson, 89 Nev. 244, 510 P.2d 625 (1973), wherein we departed from the doctrine of Lake v. Bender and declared that the increase in the value of separate property during marriage should be apportioned between the separate estate of the owner and the community property of the spouses in accordance with either of the approaches expressed in the California cases of Pereira v. Pereira, 103 P. 488 (1909), and Van Camp v. Van Camp, 199 P. 885 (1921). The trial court was granted discretion to select which approach to apportionment would achieve substantial justice.

Whether our disposition of this case is to be governed by the

---

[3]NRS 123.130(2): "All property of the husband owned by him before marriage, . . . with the rents, issues and profits thereof, is his separate property."

doctrine of Lake v. Bender or that of Johnson v. Johnson (because of the change of law pending appeal) need not be resolved since, in either instance, the decision of the trial court may be affirmed.[4]

With regard to the doctrine of Lake v. Bender, the record may be read to show that the increase in value of Joe's separate stock ownership in Wells Cargo following his marriage to Elizabeth came mainly from the natural growth of that enterprise and the combined efforts of the Wells brothers and staff. Consequently, the entire increase would be designated as separate property.

As to apportionment within the concept of Johnson v. Johnson, the Van Camp v. Van Camp approach to allocation of the increase in value would require affirmance. Under that test, community income is determined by designating a reasonable value to the services performed by the husband in connection with his separate property. Once that amount is determined, the community's living expenses are deducted therefrom to determine the balance of the community property. Beam v. Bank of America, 490 P.2d 257, 263 (Cal. 1971).

In the case at hand, the trial court found that the husband was paid $50,000 to $60,000 per year for his services to the corporation and that the community was fully compensated for his services through such salary and related benefits. The record is void of evidence to establish the community's living expenses. It was Elizabeth's obligation to offer such evidence. She did not testify, nor was evidence otherwise proffered on the point.[5] Absent such evidence the court had no base from which to make an allocation or apportionment to the community, and may not be faulted for not doing so. Therefore, we affirm the determination that the stock interest of Joe Wells in Wells

[4]Regarding change of law after trial court decision and pending appeal see: Annot., 111 A.L.R. 1317; McCabe v. Pearson, 89 Nev. 177, 510 P.2d 875 (1973); cf. Lightenburger v. Gordon, 89 Nev. 226, 510 P.2d 865 (1973); see also: Gabel v. Time Insurance Company, 478 P.2d 368 (Ore. 1970); Denison v. Goforth, 454 P.2d 218 (Wash. 1969); Arnold v. Knettle, 460 P.2d 45 (Ariz.App. 1969).

[5]The trial court was bothered by the absence of such evidence. It stated: "There is insufficient evidence . . . to attempt the dissection of a community interest in the subject stock. Certainly an arbitrary assessment, e.g., 50/50 . . . would be grossly inequitable in view of the dissipating corporate activity of decedent between 1955 and 1960 and his large annual salary from the corporation. The evidence in this case does not justify such a result."

Cargo, Inc., and the increase in the value thereof during his marriage to Elizabeth was and is his separate property.

2.    The district court not only denied a claimed community interest to Elizabeth, but also rejected several challenges urged by her, Weslee and Joe Carson Wells to the validity and enforceability of the June 30, 1960, agreement.[6] They claim the right to challenge solely by reason of their relationship to the decedent.

None of them owns stock in Wells Cargo, is a party to the agreement, cf. Woods v. Bromley, 69 Nev. 96, 241 P.2d 1103 (1952), or an assignee of a party to the agreement. Cf. Kress v. Corey, 65 Nev. 1, 189 P.2d 352 (1948). Controversies arising under an agreement properly are to be determined and settled by parties to the agreement or their assigns, that is, by those who have legal rights or duties thereunder. Absent evidence of a third party beneficiary status, an assignment of contract rights or a delegation of contract duties, neither Elizabeth, Weslee nor Joe Carson Wells has rights, duties or obligations under the agreement. A dispute does not exist between the parties to the agreement. They ask that it be performed according to its terms.

The question of standing to challenge the agreement was not tendered to the district court and consequently it proceeded to determine all attacks directed to the validity of the document and the consequences to be expected if the agreement is consummated. This court raised the issue of standing and called for briefs on the point. In response, the complaining heirs cite NRS 30.040 and NRS 30.130 of the Uniform Declaratory Judgments Act as supportive of standing since their inheritance would be "affected" by the court determination in a practical, as distinguished from a legal sense.[7] The Act, however, is

---

[6]They assert, among other things, that the agreement was not properly authenticated, contained illusory promises, was executed without Board approval, and if consummated, would impair the capital of the corporation.

[7]NRS 30.040: "Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

NRS 30.130: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected

directed only to those who enjoy a legal interest in the agreement under scrutiny. Schriber Sheet Metal & Roofers v. Shook, 28 N.E.2d 699, 703 (Ct.App.Ohio, 1940). As noted, the complaining heirs have no rights, duties or obligations under the 1960 agreement and thus do not have standing as interested persons to challenge the contract in a declaratory judgment action.

Affirmed.

MOWBRAY, GUNDERSON, BATJER, and ZENOFF, JJ., concur.

by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard."