CHARLES A. ROBISON, Appellant, v. SYLVIA A. ROBISON, Respondent.

No. 14128

December 6, 1984                               691 P.2d 451

*Denton & Denton,* Las Vegas, for Appellant.

*Manos & Cherry,* Las Vegas; *Fitzgibbons & Beatty,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

The present appeal is based largely on what appellant claims to be an erroneous characterization and valuation of various separate and community property assets owned by Sylvia and Charles Robison during their marriage. Specifically, the appellant, Charles Robison, contends that the district court erred by: (1) characterizing two parcels of real property acquired by Sylvia Robison before the present marriage as her sole and separate property although community funds had been used to pay a portion of the purchase price of the property after the marriage; (2) "picking figures out of the air" in valuing the net worth of the

community-owned business; and (3) awarding Sylvia alimony and support. We agree with the first two contentions and therefore reverse and remand the matter to the district court. We reject Charles's contention that the district court abused its discretion in awarding Sylvia spousal support and therefore affirm the judgment in part.

### Characterization of Property Purchased in Part with Community Funds

Charles and Sylvia Robison were married in Las Vegas, Nevada, on January 1, 1972. Both had been previously married and had children by their prior marriages. Sylvia Robison owned two parcels of real property when she entered into the 1972 marriage with Charles. The first parcel, located in Escondido, California, was awarded to Sylvia as her sole and separate property in 1968 by a divorce decree terminating her previous marriage. Following her marriage to Charles $3,011.00 was paid on the purchase price of the property with community funds.

Despite the community's contribution toward the purchase price, the district court characterized the parcel as Sylvia's sole and separate property. The district court reasoned that since Sylvia's income, all of which was spent in support of the community, greatly exceeded Charles's income, the payments out of community funds did not create a sufficient interest in Sylvia's separate property to give it the quality of community property.

Where payments are made with community funds on real property which was owned by one spouse before marriage, the community is entitled to a *pro tanto* interest in such property in the ratio that the community payments bear to the payments made with separate funds. Sly v. Sly, 100 Nev. 236, 679 P.2d 1260 (1984); Barrett v. Franke, 46 Nev. 170, 208 P. 435 (1922). The mere fact that the post-marriage payments were principally derived from the earnings of the owner-spouse is of no consequence. The earnings of either spouse during the marriage are considered to be community funds regardless of which spouse earns the greater income or which spouse supports the community. *See* Cord v. Neuhoff, 94 Nev. 21, 573 P.2d 1170 (1978). It was therefore error for the district court to have characterized the Escondido parcel exclusively as Sylvia's separate property.

The second parcel owned by Sylvia was a residence located on Michael Way in Las Vegas, Nevada. The Michael Way residence was purchased by Sylvia in 1969 as a home for her and her two

children. Prior to the 1972 marriage to Charles, Sylvia paid $9,748.00 on the purchase price of the Michael Way residence. After the marriage, Charles and two of his children from his previous marriage moved into the house with Sylvia and her children. Eventually $19,923.00 was paid on the purchase price from community funds.

The Michael Way residence was characterized by the district court in a similar fashion as the Escondido parcel. Aside from noting the disparity between Charles's and Sylvia's income, the district court additionally considered the use and occupation of the property during the marriage by Charles and his children. The lower court found that this benefit to Charles exceeded any community interest in the property that he would have attained as a result of the community payments.

As we have previously stated, where a portion of the purchase price of one spouse's separate property is paid with community funds, the community acquires a *pro tanto* interest in the property to the extent and in the proportion that the purchase price is paid with community funds. *Sly,* above. The district court's failure to recognize the community's interest in the Michael Way residence was therefore error.

**▆▆▆▆▆▆**

The district court considered the benefit that Charles received from the use and enjoyment of the house during the marriage as offsetting the community's interest. This was error. Under our holding in Cord v. Cord, 98 Nev. 210, 644 P.2d 1026 (1982), where a spouse makes a conscious choice to use his or her separate property, rather than available community property, to pay community expenses, the use of the separate property constitutes a gift to the community. In the case at hand, the use of Sylvia's real property as a community residence is equivalent to the use of one spouse's separate funds to pay community expenses. Since there were sufficient community funds from which to support Charles and Sylvia, in the absence of an agreement to the contrary, the use of the Michael Way property constitutes a gift of the rental value of the property to the community.[1] The fact that Charles's children were allowed to reside at the residence would not affect the nature of this gift.

In light of the principles stated above, the characterization of the Michael Way residence and the Escondido parcel as Sylvia's

---

[1] From the record it appears that Sylvia's $40,000.00 income was more than ample to support the community. Thus, the use of the Michael Way house as the community's residence was not necessitated by the lack of community funds to provide alternative housing.

separate property was error. Therefore, the case is reversed and remanded with instructions that the district court reconsider the property distribution in accordance with this opinion.

### Valuation of the Community Owned Business

In this appeal, Charles contests the district court's valuation of a community owned business including two wholly owned subsidiary corporations. For the purposes of this discussion, we do not consider it necessary to reiterate the complex financial history of each business. Instead, we focus on the lower court's method of determining the net worth of the enterprises. The district court determined the value of the ventures as follows:

> With reference to the value of the businesses and the community property interest therein, Defendant [Charles] offered the 1977, 1978 and 1979 financial statements and the 1977 and 1978 corporate income tax returns from the businesses. Based on the financial statements, the net assets of the three corporations are valued at $82,908.00. There were investments in the corporation totaling $75,500.00. The gross income return per year from the corporation to Defendant is approximately $30,000.00. The figure is subject to an offset for the value of Defendant's labor in the amount of $20,000.00, leaving a net annual income from corporate worth of $10,000.00 per year. Considering the value of the net income to corporate worth based on a five-year recapture period, such worth to the corporation is $50,000.00. Thus, the investment value, the net assets and the net earned income value of the corporations is $208,405.00. [The correct sum is $208,408.00.] To arrive at a net value of the corporations, this figure must be reduced by the outstanding long-term indebtedness (purchase price of J.C.S.) of $90,000.00 and the short-term indebtedness of $4,902.00, leaving a net value of the corporation, which is a community asset, of $113,503.00. [The correct sum is $113,506.00.]

Charles initially questions the lower court's finding that the "net assets" of the three enterprises equals $82,908.00. Charles speculates that the term "net assets" was intended to reflect the shareholder equity in the corporation. We find this interpretation of the lower court's terminology to be doubtful since the shareholder's equity in the corporations is the ultimate value to be determined when valuing the community's interest. If, on the other hand, the court meant the value of the assets as encumbered (*i.e.,* the equity value of each asset), the lower court would be

erroneously considering the corporate debts twice—the first time in valuing the "net assets" as the term is used in the court's findings, and the second time in subtracting the long and short term indebtedness of the corporation from the corporations gross value. In actions tried without a jury, the district court is required to make specific findings of fact and conclusions of law. NRCP 52(a). The findings must be sufficient to indicate the factual basis for the court's ultimate conclusions. Bing Constr. v. Vasey-Scott Eng'r, 100 Nev. 72, 674 P.2d 1107 (1984). In the case at hand, the lower court's terminology is unclear. Specifically, it is difficult to understand why the district court determined "net assets" prior to subtracting the corporate liabilities from the gross value of the enterprises. As a result of this ambiguity it is impossible to determine whether or not the findings are supported by the evidence. Accordingly, it is necessary to remand this case to the district court so that a clear basis for valuation of corporation assets may be made manifest.

Charles's second allegation of error in the lower court's method of valuing the three corporations stems from the finding that "there were investments in the corporations totalling $75,000.00." As is apparent from the portion of the court's finding quoted above, the lower court added the sum of the "investments" with the "net assets" and the "annual net income" in determining the gross value of the corporations. Charles surmises that the term "investments" meant investment from community funds and argues that the evidence does not support a finding of $75,000.00 in community investments.

In reviewing the record, we are equally confused by the term "investments." Neither party contests the fact that the parent corporation was initially financed with community funds and that the subsidiary corporations were purchased with the earnings or credit of the parent corporation. Accordingly, neither party contests the fact that the businesses are in essence, community assets. Whatever the community initially contributed to the corporations' capital is irrelevant. When the corporation is entirely a community asset, such contributions will necessarily be reflected in the net worth of the company.

Charles next disputes the lower court's finding that the aggregate long term debt of all three corporations is $94,902.00. The financial statements clearly demonstrate that the long term debt for the three corporations is $103,163.00. Although a trial court, when weighing the evidence before it, could conclude a business's assets have a greater value than that reflected on the corporate balance sheet, it is hard to imagine a situation where the debts are actually less than that reflected on the books.

Without an express finding that the balance sheets misrepresented the long term indebtedness, it is error not to consider that the debts on the corporate books reflect the actual liabilities of the business.

In light of the fact that the valuation of the three community businesses must be remanded to the district court, we consider the remaining allegations of error by the appellant to be without merit.

### Spousal Support

Aside from the dissolution of the marriage and distribution of the community property, the district court awarded Sylvia $600.00 per month in spousal support for a two-year period. In this appeal, Charles claims that the district court abused its discretion in granting spousal support since Sylvia was awarded a "disproportionate" share of the community property and since Sylvia earned approximately $40,000.00 a year as a cocktail waitress. We disagree.

We initally note that appellant's claim that Sylvia was awarded a disproportionate share of the community stems from the failure of the district court to value properly the corporate businesses or to acknowledge the community's interest in the Escondido and Michael Way parcels. Since we are remanding these issues to the district court, no judgment can be made at this time relating to claimed disproportionality of property distribution.

In granting a divorce, the district court is given broad discretion in determining whether to award spousal support to either the husband or the wife. Buchanan v. Buchanan, 90 Nev. 209, 523 P.2d 1 (1974). Although Sylvia earned a very lucrative income as a cocktail waitress for the Sahara, the record indicates that she was injured prior to the divorce and as a result has been unable to continue with her employment. Because of this sudden decrease in income, in light of the fact that Charles retained the three businesses, the district court's decision to grant spousal support is not an abuse of discretion. The award of spousal support to Sylvia is therefore affirmed.