KENNETH W. MALMQUIST, Appellant, v. NANCY MALMQUIST, Respondent.

No. 19173

April 24, 1990                          792 P.2d 372

[Rehearing denied October 24, 1990]

*Paul W. Freitag,* Sparks, for Appellant.

*McDonald and Petroni,* Reno, for Respondent.

## OPINION

By the Court, RÒSE, J.:

Kenneth W. Malmquist appeals a judgment and decree of divorce dividing his and his ex-wife Nancy Malmquist's community property. While the district court made a reasonable division of the parties' residence, we reverse the district court's determination of the separate and community property interests in the residence because the court did not utilize the more appropriate apportionment method set forth in In re Marriage of Moore, 618 P.2d 208 (Cal. 1980). We adopt a slightly modified version of the *Moore* apportionment. We cannot establish the parties' final

interests in the residence at this time because the residence has been set aside for the benefit of the children and will not actually be divided until some time in the future. Nevertheless, we offer some examples as guidance on how our modified *Moore* formulae would apply if the residence were to be divided at the present time. Although we do not believe this opinion will require any readjustment of the initial property division, we remand this case to allow the district court to make this determination. We affirm the district court's determination that Kenneth failed to meet his burden of tracing the $37,007 used for home improvements to his separate property. We further take this opportunity to clarify the proper mode of apportionment at divorce of improvements to real property. Finally, we affirm the district court's judgment and decree of divorce in all other respects.

## FACTS

Kenneth and Nancy were married on December 12, 1970. Kenneth was a practicing family physician, and Nancy was a dental hygienist. Nancy worked for approximately two years after the marriage. After the couple's first child was born, Nancy did not work during the marriage. The parties had three children during their seventeen-year marriage: Andrew, Nicholas and Casey, aged fifteen, nine and eight respectively at the time of trial. The couple separated in or around March 1986. In June 1986, Nancy filed for divorce.

In June 1967, before he married Nancy, Kenneth had purchased a residence on Wedekind Road with his former spouse, Delores Malmquist. The purchase price was $36,500. Kenneth made a $2,500 down payment and financed the remaining $34,000 by mortgage. By the time he married Nancy, Kenneth already had made mortgage payments which reduced the mortgage principal by an additional $1,037. In total, then, Kenneth had paid $3,537 towards the purchase price by the time he married Nancy. In October 1970, Kenneth and Delores were divorced. Pursuant to a property settlement agreement, Kenneth paid Delores $4,200 for her interest in the home. During their marriage, Nancy and Kenneth made community property payments on the mortgage which further reduced the mortgage principal. Although the exact amount of principal reduction attributable to these community property payments is somewhat unclear, it appears that these payments reduced the principal by approximately $14,463. Accordingly, as the district court found, the outstanding unpaid loan balance remaining at the time of divorce was $18,500.

The district court found the market value of the Wedekind Road residence at the time of divorce to be $215,000. Of that

value, the court concluded that 7.5% was Kenneth's pre-marital separate property, and 74.5% was community property. The court classified the entire remaining 18% interest as Kenneth's post-marital separate property because the court awarded temporary possession of the house to Nancy and the children. Specifically, the court imposed a constructive trust on the Wedekind Road residence for the benefit of the children. The court ordered Kenneth to make all mortgage payments and to pay for maintenance, repairs and utilities on the residence, until the youngest child reaches the age of majority or Nancy consents to a sale of the house. The court further ordered Kenneth to pay the statutory maximum in child support.

During their marriage, the Malmquists also made improvements to the Wedekind Road residence. The improvements cost $62,707 and consisted of a kitchen remodeling and greenhouse addition. Of the improvements, the $25,000 spent on the kitchen is conceded to be community property. The remaining $37,707 spent on the greenhouse came from a joint checking account in Nancy's and Kenneth's names. The district court found that Nancy and Kenneth had commingled both community and Kenneth's separate property funds in the joint account. At trial, Kenneth attempted to persuade the court that the source of the $37,707 was the proceeds from the sale of an "I Street" apartment building owned by Kenneth as his separate property. Soon after Kenneth's counsel began his attempts to trace the source of the money used to pay for the greenhouse improvements, the parties entered into a stipulation in order to speed up the process of documenting the many transactions involving the account. The following exchange occurred in connection with the stipulation:

> MS. McDONALD [for Nancy]: Maybe I can stipulate that the I Street was in the name of the partnership. That none of the wives were in that. That when it was sold, the check was payable to Ken and Nancy Malmquist. And that from that account, the greenhouse was built.
>
> Maybe we can stipulate to that and cut through a whole lot.
>
> . . . .
> . . . .
>
> MR. FREITAG [for Kenneth]: I have no objection, Your Honor. I will accept the stipulation, if I can restate it real quickly, and it will save a lot of time, that I Street property was Sparks Medical and Dental Investments partnership. That the payments that came out were made out to the husband and wife.
>
> MS. McDONALD: They were made payable to Ken and Nancy Malmquist. . . .

MR. FREITAG: And that they were deposited into this particular account.

MS. McDONALD: Yes.

MR. FREITAG: And from those deposits, the amount of $37,707.00 was spent on the greenhouse.

MS. McDONALD: Yes, I would stipulate.

. . . .
. . . .
. . . .
. . . .
. . . .
. . . .

THE COURT: And that these sums, $37,707 and some $5,000 was paid out of the account, that a check also was deposited from the I Street property or partnership sale . . .?

After this exchange, Kenneth's counsel discontinued his efforts to trace the transactions and proceeded to a different area of inquiry. The district court later held that, despite the stipulation, Kenneth had failed to establish that the funds used to purchase the greenhouse were Kenneth's separate property. Thus, the court classified the greenhouse as community property.

At trial, Kenneth also testified regarding an equity credit line debt in the amount of $71,054.23. Kenneth testified that he incurred some of this debt on behalf of the community and some of the debt for his personal expenses after the couple's separation. The court ordered Kenneth to pay this entire debt. Finally, the district court classified Kenneth's entire medical practice as community property and awarded the practice entirely to Kenneth. The court valued the practice at $32,765, of which $25,000 was business good will; the remainder was accounts receivable, equipment and cash.

## LEGAL DISCUSSION

On appeal, Kenneth contends that the district court erred by: (1) failing to use the method announced in *Moore, supra,* in determining the parties' respective interests in the Wedekind Road residence; (2) classifying the greenhouse improvement as community property in disregard of the stipulation quoted above; (3) ordering Kenneth to pay the entire equity credit line debt; (4) ordering Kenneth both to pay the maximum level of child support and to continue to pay the mortgage on the residence which was set aside for the children's benefit; and (5) failing to utilize the proper method of apportioning the business good will in his medical practice. We address each of Kenneth's contentions in sequence.

I. *Apportionment of community and separate property interests in the Wedekind Road residence.*

Both parties agree that the community and separate property interests are entitled to reimbursement to the extent that those interests actually contributed toward reduction of the principal on the mortgage for the Wedekind Road residence. Additionally, this court has recognized that the community is entitled to a *pro rata* ownership share in property which community funds have helped to acquire. Robison v. Robison, 100 Nev. 668, 670, 691 P.2d 451, 454 (1984). The question presented by Kenneth's appeal is precisely how to apportion the community and separate property shares in the *appreciation* of a separate property residence obtained with a separate property loan prior to marriage. Although we understand and respect the district court's approach to apportionment of these interests, we hereby adopt, with one modification, the mode of apportionment set forth in In re Marriage of Moore, 618 P.2d 208 (Cal. 1980).

Without a presumptive approach to this apportionment problem, persons similarly situated may receive unequal distributions in different cases. We have full confidence that the district judges of this state can reach equitable distributions in particular cases. No matter how fair the result in individual cases, however, the aggregate result becomes unfair when similarly situated persons receive disparate returns on their home investments. We further note that the presumptive approach for apportionment of home equity adopted here in no way abrogates the rule of just and equitable distribution, which we recently enunciated in McNabney v. McNabney, 105 Nev. 652, 782 P.2d 1291 (1989). The modified *Moore* formulae simply establish the community interest in a residence. *McNabney,* in turn, governs how the court may actually divide that community interest between the parties.

*Moore* generally grants the community a *pro rata* share in appreciation of a separate property residence according to the ratio that mortgage principal reduction attributable to community property payments bears to the original purchase price. *See Moore,* 618 P.2d at 210-11. More specifically, the community property appreciation share under *Moore* is the amount by which community property mortgage payments have reduced the mortgage principal, divided by the original contract purchase price of the residence. This fraction is multiplied by the total appreciation to yield the final community share in appreciation. Assuming the mortgage was originally a separate property loan, the separate property receives credit for the *entire* outstanding unpaid mortgage balance, *plus* the amount by which separate property mortgage payments reduced the mortgage principal; this sum is then divided by the original purchase price of the residence and

multiplied by the total appreciation to yield the final separate property appreciation share.

The *Moore* case presents an understandable and workable way to determine the separate and community interests in the appreciation of a residence. In accord with critics of the *Moore* decision, however, we adopt a different method for assigning credit for the unpaid mortgage balance. *See* Comment, *The Division of the Family Residence Acquired with a Mixture of Separate and Community Funds,* 70 Cal.L.Rev. 1263 (1982) (authored by Peter M. Moldave); Wagner, *Apportionment of Home Equity in Marital Dissolutions Under California Community Property Law: Is the Current Approach Equitable?,* Comm.Prop.L.J. (Winter 1982). We believe that neither the community or separate property should receive credit for the *entire* outstanding mortgage balance on the sole basis that the loan was originally a separate or community obligation. When, as here, the community has contributed substantially to principal reduction, assigning the separate property credit for the *entire* outstanding loan balance yields results which are inequitable to the community; (the result may be equally unfair to the separate property in cases involving a mortgage taken out by the community). Credit for the outstanding loan balance should be divided according to the number of monthly payments made by separate or community property. With a new long-term loan, a considerable number of monthly payments can be made without there being a significant reduction in principal.

Moldave has stated an equitable and workable approach for assigning credit for the unpaid mortgage balance, and we hereby adopt this approach. The approach is essentially to assign credit for the unpaid mortgage balance according to a time rule. Moldave explains:

> The proposed method is to allocate the appreciation attributable to the loan proceeds to separate or community sources pro rata according to the total number of monthly payments made from separate or community sources. . . .
>
> The appreciation is shared according to the *number* of monthly payments, and not the amount of monthly principal payments, both for reasons of simplicity and fairness. Adding the varying principal payments is more complicated, but the more important objection is that it gives a windfall to the party making the later payments, because the principal portion of the monthly payment rises over the term of a fully amortized level payment loan. Counting only the number of payments avoids affecting the shares because of the timing factor.

70 Cal.L.Rev. at 1288-89 (footnotes omitted) (emphasis in original).

Modified slightly to incorporate Moldave's approach, the *Moore* formulae for determining the community and separate property interests in total home equity, including appreciation, can be stated arithmetically as follows:

1. $SP = PD_{sp} + [\frac{(PD_{sp} + OL_{sp})}{(PP)} \times (A)]$; and

2. $CP = PD_{cp} + [\frac{(PD_{cp} + OL_{cp})}{(PP)} \times (A)]$, WHERE:

(a) $SP$ = total separate property interest in home equity;

(b) $CP$ = total community property interest in home equity;

(c) $PD_{sp}$ = "pay down" attributable to separate property (*i.e.*, the reduction in mortgage principal due to separate property payments, plus the separate property downpayment, if any);

(d) $PD_{cp}$ = "pay down" attributable to community property (*i.e.*, the reduction in mortgage principal due to community property mortgage payments, plus the community property downpayment, if any);

(e) $OL_{sp}$ = portion of outstanding (unpaid) loan to be credited to separate property;

(f) $OL_{cp}$ = portion of outstanding (unpaid) loan to be credited to community property;

(g) $PP$ = contract purchase price of the residence;

(h) $A$ = appreciation of the residence.

Applying each of these equations yields the correct respective shares in most cases.[1]

---

[1] The above stated formulae derive from formulae used as a teaching tool by Carol Bruch, professor of law at Martin Luther King, Jr. Hall School of Law, University of California at Davis. The above stated formulae are potentially applicable to any property which undergoes significant appreciation and is purchased on credit. While this case does not involve separate property payments on a community residence, we believe that the formulae should apply both to community contributions to separate property residences and to separate property contributions to community property residences. *See Moore,* 618 P.2d at 211. In California, on the other hand, Section 4800.2 of the Civil Code has been interpreted to preclude the separate property from obtaining an interest in the appreciation of a commu-

In the formulae, "SP" represents the final separate property interest in home equity, and "CP" represents the final community property share. If more than one spouse contributes separate property, then a third formula, identical to formula number one, may be used to calculate the second spouse's separate property interest. "$PD_{sp}$" denotes the separate property "pay down." The separate property pay down equals the actual reduction in mortgage principal attributable to separate property mortgage payments up to the time the house is divided, *plus* the down payment, *if* the down payment is made from separate property. "$PD_{cp}$" denotes the community property pay down. If the down payment is made from community property, then the down payment becomes part of the community property pay down, not the separate property pay down. Neither community nor separate property pay down includes payments going towards mortgage interest or taxes, because taxes and interest payments do not directly increase the equity value of the property. *Moore,* 618 P.2d at 210-11. "PP" denotes the original contract purchase price of the residence or property. "A" generally denotes the appreciation of the house, measured by the difference between the market value at the time of trial and the contract purchase price. Upon sale, however, the net sale proceeds may differ from the estimated market value. Thus, when the residence is actually sold, district courts should use the actual net sale proceeds, instead of the estimated market value, in calculating appreciation.

---

nity property residence, even when separate property makes payments on the mortgage; in such a case, the separate property receives only reimbursement. In Re Marriage of Huxley, 206 Cal.Rptr. 291, 295 (Ct.App. 1984). We do not intend our adoption, in Part III of this opinion, of the Section 4800.2 measure of reimbursement for improvements to deprive the separate property of its *pro rata* ownership share in a community property residence based on mortgage payments made by separate property. Instead, we believe that the formulae stated above provide the preferable measure of compensation of separate property for its contributions toward the acquisition of a community residence.

We do not suggest that these formulae represent the only way to apportion these interests. For example, if the residence is purchased with cash, the parties are entitled to a share in appreciation according to the ratio that each cash contribution bears to the original purchase price. Additionally, when the vast bulk of the appreciation occurs before marriage, it may be appropriate to award the separate property the *entire* amount of pre-marriage appreciation; then the court can use these formulae to calculate the additional separate and community property shares in appreciation occurring *after* the marriage. *See, e.g.,* In re Marriage of Marsden, 181 Cal.Rptr. 910 (Ct.App. 1982). The trial court also may have greater latitude in determining these respective interests where one spouse has contributed "industry" rather than community capital to the property. *Id.* at 916, n.2. Nevertheless, we conclude that, in most cases, the formulae stated above are the proper mode of apportionment of these interests.

In Re Marriage of Horowitz, 205 Cal.Rptr. 874, 878, n.4 (Ct.App. 1984).

"OL" generally denotes the outstanding unpaid mortgage balance at the time of trial. "$OL_{sp}$" and "$OL_{cp}$" will denote the dollar amounts of the outstanding loan balance to be credited to separate and community property under Moldave's approach. For example, "$OL_{sp}$" equals the percentage of the total number of monthly mortgage payments made with Kenneth's separate property, multiplied by the total outstanding mortgage balance. In order to prevent manipulation of this time rule, only *routine* monthly mortgage payments are considered. Moldave, *supra,* at 1288. Large, non-routine lump sum payments which reduce the principal must be credited to "$PD_{sp}$" or "$PD_{cp}$," but not toward "$OL_{sp}$" or "$OL_{cp}$." Moldave suggests that courts should consider only payments made during the period "between the time the loan is taken out and the time the parties *separate.*" *Id.* (emphasis added). We believe, however, that the courts should consider all *routine* mortgage payments made after separation, up to the time of the final division at trial. If, as in the present case, the residence is set aside for the benefit of the children, the courts generally should give the spouse making routine separate property mortgage payments credit, under both "$PD_{sp}$" and "$OL_{sp}$," until such time as the residence is actually sold or divided.

Having set forth the applicable principles of law, we turn to the facts of this case. Although the district court did not set forth its methodology, Kenneth appears to have ascertained the method the court employed in determining the parties' respective interests in the residence. The court established $103,407 as the property's total purchase price. It arrived at this figure by adding the initial purchase price ($36,500), the amount Kenneth paid for his former wife's interest ($4,200) and the cost of the improvements to the property ($62,707). The district court then determined Kenneth's separate property contribution by adding Kenneth's down payment ($2,500), the payment for his former wife's interest ($4,200) and the reduction in principal attributable to separate property loan payments before the marriage ($1,037), a total of $7,737. The court divided the total separate property contribution by the purchase price to reach the final separate property share in the property of 7.5%. The court determined the community property contribution by adding the cost of the improvements which the court classified as community property ($62,707) and the amount by which community property payments had reduced the mortgage principal ($14,463), a total of $77,020. The court

divided the total community property contribution by the purchase price to reach the final community property share of 74.5%. The court finally divided the unpaid balance on the mortgage ($18,500) by the $103,407 purchase price, yielding a further 18% separate property share in the property; the court classified this 18% share as Kenneth's separate property since Kenneth was to continue to make the mortgage payments following divorce.

The district court's method of apportionment deviated from our modified *Moore* approach in two principal ways. First, the district court should not have included as part of the purchase price the money paid by Kenneth to purchase his former wife's interest; the purchase price includes only the contract purchase price. Second, the district court should not have included as part of the purchase price the cost of improvements made to the property. The question of improvements should be considered separately from the question of apportionment of appreciation. We will address the question of how to apportion improvements in Part III of this opinion.

What follows is an example of how the district court should have applied the modified *Moore* formulae if the residence had been divided at the time of trial, rather than set aside for the children. Due to limitations in this record, we consider only the mortgage payments made up to the time of the parties' separation; normally, the district court should consider all routine mortgage payments made up to the time the residence is actually divided.

The outstanding loan balance at the time of trial was $18,500. Kenneth acquired the home on June 26, 1967, making separate property mortgage payments from July 1967 through December 1970, when Kenneth and Nancy married. Kenneth thus made separate property mortgage payments for 41 months. The community made mortgage payments from January 1971 until the separation in March 1986, a total of 183 months. In all, there appear to have been 224 routine monthly mortgage payments between the date of acquisition of the residence and the date of separation. Kenneth made 41, or 18.30%, of the monthly payments. The community made 183, or 81.70%, of the monthly payments. "$OL_{sp}$" therefore equals $3,386 (18.30% of the outstanding balance of $18,500) and "$OL_{cp}$" equals $15,114 (81.70% of $18,500).

The total pay down on purchase price attributable to Kenneth's separate property ($PD_{sp}$) was the sum of his $2,500 down payment and the $1,037 by which Kenneth's payments reduced the principal before he married Nancy. This is a total of $3,537. To obtain Kenneth's percentage share in the appreciation, we add $3,537

$(PD_{sp})$ to \$3,386 $(OL_{sp})$ and divide this sum by the original contract purchase price of \$36,500. This yields a separate property appreciation share of 18.97%. The total pay down on the purchase price attributable to community property $(PD_{cp})$ equals \$14,463, the amount by which community payments actually reduced the mortgage principal. To obtain the community share in appreciation we add \$14,463 $(PD_{cp})$ to \$15,114 $(OL_{cp})$ and divide by the purchase price. This yields a community appreciation share of 81.03%. Subtracting the purchase price of \$36,500 from the market value at time of trial of \$215,000 yields a total appreciation of \$178,500. Multiplying the respective final appreciation shares by this appreciation yields a community property appreciation share of \$144,638.55 (81.03% × \$178,500) and a separate property appreciation share of \$33,861.45 (18.97% × \$178,500).[2]

We have now established the respective shares in appreciation. To establish the final equity interests of the community and of Kenneth's separate property we must add to the respective appreciation shares the respective pay downs attributable to separate and community property. This step represents simple reimbursement for actual contributions made toward the equity. This yields a final community property share in the equity value of the residence of \$159,101.55 (\$14,463 + \$144,638.55) and a final separate property share of \$37,398.45 (\$3,537 + \$33,861.45). Adding these final shares yields a total equity value in the residence of \$196,500. This total equity value is less than the total market value by the amount of the outstanding mortgage balance, which was \$18,500 at the time of divorce. The assignment of this outstanding mortgage as a debt in reaching an overall division of property is a separate issue from the allocation of home equity just discussed.

After a district court calculates the final community interest according to the modified *Moore* formulae, the court still faces the separate problem of how to divide the community interest in a single residence. A good summary of the five principal methods of actually dividing the final community interest in a residence may be found in *Horowitz,* 205 Cal.Rptr. at 878-879.

In the present case we recognize that the residence will actually

---

[2]We stress that these figures are merely examples. The final result reached in this case will differ from this example because the residence will not actually be divided until some time in the future when Nancy consents to a sale or the children reach the age of majority. Additionally, as explained in Part IV of this opinion, the court may alter application of the modified *Moore* formulae in order to account for the substantial improvements made to the residence.

be divided at a future date because the court awarded Nancy and the children temporary possession of the residence. This presents a special situation different from the more typical example given above. Ideally, in this situation the court can award the spouse who loses possession of the house other community assets to offset that spouse's interest in the house. If this is not possible, however, the parties must address the issue of apportioning their respective interests in the house at the time in the future when the residence is actually divided. If so, the respective interests should be calculated by reapplying the modified *Moore* formulae based on the appreciation of the house at the time the house is finally divided. *Cf. Horowitz, supra* (applying percentage interests established for a residence purchased with *cash* on the basis of appreciation which had occurred *after* the judgment of divorce during the time the house was set aside for the children). Kenneth should receive credit under the formulae for the mortgage payments the court ordered him to make during the time the residence is set aside for the children. To the extent that Kenneth's routine post-divorce mortgage payments further reduce the principal, Kenneth will receive credit according to the variable "$PD_{sp}$." As stated above, Kenneth also should receive credit for his continuing routine mortgage payments under the variable "$OL_{sp}$."

Finally, in this case the application of the modified *Moore* formulae may differ from the example just given because this case involves improvements. Part IV of this opinion contains an example applying the modified *Moore* formulae after taking improvements into account.

## II. Classification of the greenhouse improvements as separate or community property.

We have indicated that the district court erred by factoring the cost of the improvements into the calculation of the respective property shares in the Malmquists' principal residence. Before we can address the question of apportionment of the improvements, we must first classify the improvements as separate or community property. Of the total of $62,707 in improvements, the $25,000 spent on the kitchen remodeling is conceded to be community property. The issue presented by Kenneth's appeal is whether the remaining $37,707 paid for the greenhouse improvement is community property or Kenneth's separate property. Kenneth argues that, contrary to the district court's decision, the stipulation quoted above establishes conclusively that the greenhouse was paid for from his separate property.

Kenneth received his share of the proceeds from the sale of the

"I Street" partnership by check made payable to both Nancy and him. This check was endorsed by the parties and deposited in their joint checking account. The greenhouse improvements were paid for from this account. The district court found that both community and separate property funds were commingled extensively in the joint account from which the greenhouse payments were made. Once an owner of separate property funds commingles these funds with community funds, the owner assumes the burden of rebutting the presumption that all the funds in the account are community property. Lucini v. Lucini, 97 Nev. 213, 215, 626 P.2d 269, 271 (1981); *Marsden*, 181 Cal.Rptr. at 918. Generally speaking, there are two ways to rebut the presumption that commingled funds are community property: (1) direct tracing of the source of a particular purchase to the separate property portion of the account, or (2) proof that at the time of the purchase all community income was exhausted by family expenses. *Marsden*, 181 Cal.Rptr. at 918. Neither party to this appeal argues for application of the exhaustion method. Therefore, Kenneth must shoulder the burden of direct tracing.

Direct tracing requires Kenneth to establish that the timing and amounts of separate property deposits and withdrawals to pay for the improvements clearly indicate that the payments came from separate property funds, as Kenneth claims he intended. *Marsden*, 181 Cal.Rptr. at 919. The documentary evidence in support of Kenneth's direct tracing consisted of exhibits introduced at trial. These exhibits were not made part of the record on appeal. Accordingly, the only question before this court is whether the stipulation sufficed as a matter of law to satisfy Kenneth's burden of direct tracing. We conclude that the stipulation does not satisfy this burden as a matter of law and therefore affirm the district court's classification of the greenhouse improvement as community property.

The stipulation, while somewhat ambiguous, arguably establishes that Kenneth's separate property was deposited into the joint account *and* that the greenhouse was paid for using the money so deposited in this joint account. Kenneth argues that this alone satisfies his burden of tracing. Again, however, the bank accounts are not part of the record on appeal. Thus, the record before us does not establish when money was deposited into the joint account or withdrawn for the greenhouse improvement. We do not know the balance in the joint account at the relevant times. Based on all the evidence presented at trial, the district court determined that, despite the stipulation, the money was commingled in a joint account and Kenneth had not sustained his burden of tracing the money for the greenhouse to his separate

property deposits into the joint account. Without the bank records, we are unwilling to disturb the district court's determinations on the strength of the stipulation alone. After reviewing the bank accounts and hearing the testimony of the parties, the district court could have concluded that the evidence was sufficiently strong to support a finding of commingling and that the stipulation concerning the funds was not sufficient to refute this. Based on the record before us, we cannot conclude as a matter of law that the district court erred in determining that the greenhouse improvement was made from community funds.

III. *Apportionment of community property improvements to a separate property residence.*

Having classified the improvements as community property, we must now decide how to apportion them. Apportionment of improvements must be analyzed separately from the apportionment of home equity pursuant to the modified *Moore* standard. The community property improvements to Kenneth's separate property residence raise a new apportionment issue: should these contributions toward improvements be presumed gifts, be measured by simple reimbursement or be measured by some other method which gives credit for appreciation due to the improvements? We conclude that in most cases simple reimbursement without interest is the appropriate measure for both separate and community property improvements.

Other legal authorities support the establishment of a reimbursement measure for both separate and community property improvements. While they do not agree on the precise measure of reimbursement, several courts have required some compensation to the community for community property improvements to separate property. *See* Portillo v. Shappie, 636 P.2d 878 (N.M. 1981); Elam v. Elam, 650 P.2d 213 (Wash. 1982); Fisher v. Fisher, 656 P.2d 129 (Idaho 1982); Honnas v. Honnas, 648 P.2d 1045 (Ariz. 1982). We reject the rule that community property improvements to separate property themselves become separate property. *But see* In re Marriage of Camire, 164 Cal.Rptr. 667 (Ct.App. 1980). We further note that California recently enacted a statute establishing the principle of reimbursement of the separate property for separate property contributions to community property. *See* Cal.Civ.Code § 4800.2 (WestSupp. 1989). Although this case does not involve separate property improvements to community property, we note that we see no good reason why the reimbursement measure ought not apply to separate property improvements to community property as well. In most cases we believe reimbursement will be a fair and adequate

measure of the separate or community property contribution. Common experience informs us that, in most cases, improvements add little to the market value of a residence above the cost of the improvement. Indeed, the cost of improvements to residential housing often exceeds any increase in the market value of the residence attributable to the improvements. Moreover, in this case, both separate and community property *already* have shared in any added market value attributable to the improvements, based on application of the apportionment formulae applied above.

While reimbursement is the general rule, we note that in some cases reimbursement may not be the appropriate measure, and the district court may deviate from the reimbursement measure where necessary to effectuate a proper apportionment. For example, where the improvements actually decrease the value of the property, reimbursement may be too generous a measure. Alternatively, reimbursement may be too stingy a measure where the vast bulk of appreciation is due to the improvements. This may be the case, for example, when community funds are used to substantially renovate or rebuild a dilapidated residence, or when community funds pay to construct a house on formerly unimproved separate real property. In such cases, an appreciation share may be the fairest measure of the community or separate property improvement contribution. If a party can prove that the appreciation is almost exclusively due to improvements, and not to market forces, a court may in its discretion apportion this appreciation entirely to the contributing property. Additionally, if the improvement is purchased with credit and both separate and community property contributions are made to the improvement, apportionment of interests in the improvement would be possible based on a separate application of the formulae stated above. This case-by-case approach is consistent with the well-reasoned opinion of the New Mexico Supreme Court in *Portillo, supra,* and this approach furthers our overriding goal of equitable divisions of marital property. In the present case, however, there is no evidence that the appreciation of the Wedekind residence was due almost exclusively to the improvements, and the improvements were not purchased on credit with both separate and community property contributions. Accordingly, the proper measure of compensation for the improvements in this case is simple reimbursement.

Section 4800.2 of the California Civil Code specifies the scope and precise measure of reimbursement of separate property for

separate property contributions to community property. We adopt the rules stated in Section 4800.2 for community property contributions toward improvements of separate property; we believe that the same rules should apply to separate property contributions toward improvement of community property. Specifically, reimbursable improvements do not include maintenance, tax, interest, insurance payments, or inflation adjustments. Reimbursement must not exceed the market value of the entire property at the time of division. Accordingly, in reaching the initial division of property in the present case the district court should have simply credited the community with full reimbursement in the amounts of $25,000 for the kitchen remodeling and $37,707 for the greenhouse. The district court should have done this separately and independently of the calculation of the parties' shares in appreciation.

IV. *Calculation of community and separate property interests in a marital residence after taking into account improvements.*

In cases not involving improvements, the district court will calculate the final equity shares as stated in Part I of this opinion. Additionally, where the residence is acquired solely by community or separate property, there is no modified *Moore* apportionment issue and improvements will generally be measured by simple reimbursement. The present case, however, presents a hybrid problem: the residence was acquired by a mixture of community and separate property, *and* there were community improvements to a separate property residence. In these hybrid cases, the district court may, in its discretion, order the community or separate property reimbursement shares to be paid in at least two ways. First, the district court may award the party who makes the improvements other community assets of a value which offsets that party's reimbursement share. If the district court here ultimately chooses this approach, the parties' interests in the home equity will be calculated by the method set forth in Part I of this opinion.

Second, the court can award the reimbursement share from the proceeds of sale of the residence *before* applying the modified *Moore* formulae. We recognize that, in the present case, the residence will not actually be divided until some future date, by which time the residence may have appreciated further and Kenneth will presumably have made several more mortgage payments from his separate property. Nevertheless, by way of example, we apply the second method for paying out reimbursement to the facts of this case as set forth in Part I of this opinion; we stress that this example will differ from the final result in this case,

because the residence will not actually be divided until some time in the future.

First, $62,707 would be paid off the top to the community as reimbursement for the money expended for improvements. Next, the modified *Moore* formulae would be applied to the *remaining* value of the residence. The remaining market value of the house here, including the mortgage thereon, would be $152,293 ($215,000 minus the $62,707 in improvements). Subtracting the purchase price of $36,500 from $152,293 gives us the remaining appreciation of $115,793. Applying Kenneth's 18.97% appreciation share to the remaining appreciation (18.97% × $115,793) would give Kenneth an interest in the remaining appreciation of $21,965.93. Adding to this Kenneth's separate property contributions of $3,537 fixes Kenneth's final separate property interest in the remaining equity value of the house at $25,502.93. The community interest in the remaining value of the house would be calculated by applying the community property appreciation share of 81.03% to the remaining appreciation (81.03% × $115,793), giving us $93,827.07. To this must be added the community property contributions that reduced the loan in the amount of $14,463, for a final community share in the remaining value of the house of $108,290.07. In summary, the total community interest in the residence, if divided at the time of trial, would be $170,997.07, representing $62,707 in reimbursement for community improvements plus the $108,290.07 community interest in appreciation. The total separate property interest would be $25,502.93.

The total community interest of $170,997.07 stated in our example is not vastly different from the community interest in the home equity reached by the district court (approximately $146,392). Additionally, the residence itself will not actually be divided until some time in the future. For these reasons, we do not anticipate that the district court will need to readjust its initial community property division in any significant manner due to this opinion. We further anticipate that the court will eventually allocate the property shares in the residence according to the second method of paying out the improvements just discussed. Nevertheless, we remand this case to the district court to permit readjustment of the initial division of property if the court deems this necessary in light of this opinion. At the future time when the residence is actually divided, the district court should utilize the modified *Moore* formulae explained in this opinion.

V. *Kenneth's other assignments of error.*

Kenneth assigns as error three other acts or omissions by the

district court. First, Kenneth urges that the district court erred by ordering Kenneth to pay the entire equity credit line debt, because the debt was community property. This contention is without merit. The district courts of this state are granted broad discretion to determine the equitable distribution of community property and debts; the court need not make an exactly equal division of the community property. Johnson v. Steel Incorporated, 94 Nev. 483, 485, 581 P.2d 860, 862 (1978). Even if the entire debt was community property, the district court's order was not manifestly inequitable, because Kenneth's *overall* property distribution was substantially greater than Nancy's and Kenneth enjoys a much greater future income potential.

Kenneth next contends that the district court erred by ordering him to pay the statutory maximum of child support *and* allowing Nancy to retain possession of the residence until the youngest child reaches majority, with Kenneth to make the mortgage payments until the residence is sold. Neither the child support nor the alimony provisions of the Nevada Revised Statutes precludes the district court from making both orders. *See* NRS 125.150(1)-(4); NRS Chapter 125B. Indeed, this court has suggested that an award both of possession of the family residence and of child support is proper. Stojanovich v. Stojanovich, 86 Nev. 789, 793, 476 P.2d 950, 952 (1970). Moreover, the orders in this case are not manifestly inequitable where: Kenneth will receive credit for his future mortgage payments under the modified *Moore* formulae; Kenneth has a much higher future earning capacity than Nancy; and Kenneth received substantially more community assets in the initial property division. For these reasons, the district court's orders regarding child support and possession of the house in the present case were not an abuse of discretion.

Kenneth's final contention is that the district court erred by failing to apply to his medical practice the methods of apportionment of separate and community property interests in a business set forth in Pereira v. Pereira, 103 P. 488 (Cal. 1909) or Van Camp v. Van Camp, 199 P. 885 (Cal. 1921). This court has required district courts to utilize either the *Van Camp* or *Pereira* apportionment methods in classifying separate property businesses. Wells v. Bank of Nevada, 90 Nev. 192, 194, 522 P.2d 1014, 1016 (1974). Even assuming the district court erred by failing to apply one of these two apportionment methods, however, Kenneth has failed to establish that such error was prejudicial. Kenneth has pointed to no evidence to refute the district court's determination that the business and business good will

were entirely community property; thus, no issue of apportionment of separate and community shares in the medical practice even arises. The only question facing the district court was one of valuation of a community medical practice, including the business good will. The district court's finding that the vast bulk of value of the practice consisted of good will appears sound. In valuing the business good will, the district court was free to use any legitimate method of valuation which measures the present value of good will by taking into account past earnings. Ford v. Ford, 105 Nev. 672, 680, 782 P.2d 1304, 1309 (1989). Here, the district court's valuation of good will was well within the range of valuations offered at trial, and the valuations were properly reached by methods which took into account past earnings. Accordingly, the district court's valuation must stand.

## CONCLUSION

We conclude that, in most cases, the modified *Moore* formulae yield the correct community and separate property shares in the equity value of a marital residence purchased by mortgage. The question of improvements should be considered separate from the modified *Moore* calculation. In most cases, simple reimbursement is the appropriate measure for compensating the property providing the improvements. Because the district court did not apply these rules of apportionment, we reverse the district court's apportionment of the parties' interests in the marital residence and in the improvements. We affirm the district court's classification of the greenhouse improvements as community property. We affirm the district court's judgment in all other respects.

Accordingly, the district court's judgment is affirmed in part and reversed in part in the manner stated in this opinion. The case is hereby remanded for any further necessary proceedings, and with instructions that the district court: (1) assist the parties, if necessary, in the future division of the marital residence according to the principles set forth in this opinion; and (2) decide whether any further action is necessary at this time to effectuate an equitable division in light of this opinion.

YOUNG, C. J., STEFFEN, SPRINGER, and MOWBRAY, JJ., concur.