*1377
 
 OPINION
 

 Per Curiam:
 

 On August 1, 1991, Factory Service Center (“FSC”) entered into a five-year maintenance contract with respondents Jeffrey Lau and Sophie Lau d/b/a El Cid Hotel a/k/a Hotel Fortune; Paul R. Goodman and Katheryn Aliene Goodman, each individually (“the El Cid Group”). According to the contract, FSC was to provide maintenance to primary and secondary air conditioning systems in the El Cid Hotel, which is owned by the El Cid Group.
 

 On April 9, 1992, FSC and the El Cid Group entered into a second contract that provided for the installation of a secondary air conditioner compressor into the El Cid Hotel. The price of the contract was $13,500.00, with $6,500.00 to be paid at the execution of the contract and the balance paid in equal payments over four months beginning thirty days after installation of the compressor. The president of FSC executed the installation contract on behalf of FSC. Sophie Lau (“Lau”) executed the contract for the El Cid Group.
 

 On May 22, 1992, FSC completed installation of the secondary air conditioner compressor. However, on May 27, 1992, the unit stopped working.
 

 The El Cid Group contacted FSC to repair the air conditioning unit on several occasions up to June 8, 1992. On June 9, 1992, FSC wrote the El Cid Group and stated that the compressor failure was due to the El Cid Group’s failure to maintain the hotel water tower used by the compressor. On June 25, 1992, FSC wrote again demanding the El Cid Group repair the water tower and pay the full amount of the April 1992 contract. On June 26, 1992, Lau wrote FSC stating the hotel was losing revenue and that she demanded a refund of the $6,500.00 already paid or a new air conditioner compressor.
 

 Subsequently, the El Cid Group hired a contract repair person, who discovered the unit’s failure was due to a defective part. On July 7, 1992, the repair person fixed the air conditioning unit.
 

 In the meantime, on July 1, 1992, appellant Diamond Enterprises, Inc., d/b/a Factory Service Center (“Diamond”) purchased FSC. Pursuant to the purchase, FSC assigned substantially all of its assets to Diamond. The purchase included accounts receivable that FSC had on its books. One of the accounts receivable was the April 1992 contract between FSC and the El Cid Group. Subsequent to the purchase, Diamond took
 
 *1378
 
 over the existing operations of FSC, used the same building, and served the same clients. Diamond operated FSC’s operations under the FSC name until early 1993.
 

 On November 16, 1992, Diamond filed a complaint against the El Cid Group for $8,670.00 (the amount due on the April 1992 contract plus interest). On December 16, 1992, the El Cid Group counterclaimed against Diamond for breach of contract, asking for lost revenue as a result of the breach.
 

 On September 21, 1995, a bench trial was conducted. On October 11, 1995, the district court entered judgment in favor of Diamond for $15,721.48, and in favor of the El Cid Group for $36,690.92, thus giving the El Cid Group a net award of $20,969.44, plus interest, costs, and attorney’s fees.
 

 On November 20, 1995, Diamond filed its notice of appeal from the final judgment.
 

 DISCUSSION
 

 A “district court’s findings will not be disturbed on appeal unless they are clearly erroneous and are not based on substantial evidence.” Gibellini v. Klindt, 110 Nev. 1201, 1204, 885 P.2d 540, 542 (1994).
 

 Diamond raises the issue of contract successor liability. The district court found Diamond to be liable on the contract with the El Cid Group. After a thorough review of the record, we conclude the district court did not err in its decision and, therefore, we decline to address this issue.
 

 Diamond also argues that the computation of the lost profits did not reflect expenses saved by the hotel due to the decreased need for electricity, personnel, etc. However, Diamond never made this argument to the district court before judgment was rendered. Diamond did make this argument in a motion for reconsideration
 
 after
 
 the final judgment was entered; however, Diamond’s appeal is from the final judgment. It is well established that arguments raised for the first time on appeal need not be considered by this court. Montesano v. Donrey Media Group, 99 Nev. 644, 650 n.5, 668 P.2d 1081, 1085 n.5 (1983),
 
 cert. denied,
 
 466 U.S. 959 (1984). Diamond should have made this argument below in response to the El Cid Group’s counterclaim if it was to be preserved for appeal. Therefore, we conclude that Diamond waived this issue on appeal.
 

 Last, Diamond argues that the district court erred in computing the award of $20,969.44 ($36,690.92 in lost revenue less money
 
 *1379
 
 due on the service contract and interest of $15,721.48) to the El Cid Group.
 

 We have held that the district court is given wide discretion in calculating an award of damages, and this award will not be disturbed on appeal absent an abuse of discretion. Flamingo Realty v. Midwest Development, 110 Nev. 984, 987, 879 P.2d 69, 71,
 
 cert. denied,
 
 514 U.S. 1127 (1994).
 

 The district court awarded damages to the El Cid Group for lost profits during the period of April 10 to July 2, 1992. To compute the damages resulting from the breach, the district court may have used an average profit for the same months of the previous three years. Ultimately, the district court found that resulting damages were $310.94 per day for the period from April 10, 1992, to July 7, 1992, excluding the days the air conditioner was actually working. Without indicating how many days the air conditioning system was not working, the district court determined the amount of lost revenue was $36,690.92. This is divisible by $310.94 for a quotient of exactly 118 and, therefore, would be appropriate for 118 days of lost revenue. However, there are only 89 days from April 10 to July 7, inclusive. Thus, even if the evidence supported the air conditioning was not working the entire period stated, the lost revenue would only be 89 multiplied by $310.94, or $27,673.66. This is $9,017.26 less than the district court’s computation of lost revenue. Assuming the district court’s calculations are correct, there is nothing in the findings of fact to support the award of the extra $9,017.26, and, therefore, the district court abused its discretion.
 

 An additional problem arises if we assume the district court merely made a mathematical error, and that the correct figure should have been for the entire 89 days multiplied by $310.94, or $27,673.66. The findings of fact indicate that the damages to the El Cid Group covered the 89-day period between April 10 to July 7, 1992,
 
 excluding days the air conditioning was actually working.
 
 Indeed, the record shows that there was a period of time in June 1992 when the air conditioning was operational, thus reducing the number of days that the El Cid Group was damaged. Thus, the district court abused its discretion by not making findings as to which days the El Cid Group was actually damaged by the inoperable air conditioner. Therefore, we conclude the district court abused its discretion in the findings of fact and calculations supporting the award of damages to the El Cid Group.
 

 
 *1380
 

 CONCLUSION
 

 Based on the reasoning discussed above, we reverse the district court’s judgment and remand with instructions to recalculate damages and for factual findings in support of the recalculations.