139 Nev., Advance Opinion 13

IN THE SUPREME COURT OF THE STATE OF NEVADA

EVAN S. WISHENGRAD AND BETH
WISHENGRAD, INDIVIDUALLY AND
AS TRUSTEES OF THE EVAN & BETH
WISHENGRAD REVOCABLE LIVING
TRUST DATED MAY 25, 2004,
Appellants,
vs.
CARRINGTON MORTGAGE
SERVICES; AND CARRINGTON
FORECLOSURE SERVICES, LLC,
Respondents.

No. 83176

FILED

MAY 18 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from district court orders granting summary judgment and a motion to dismiss in a home foreclosure dispute. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

*Affirmed.*

The Law Offices of Timothy Elson and Timothy P. Elson, Las Vegas, for Appellants.

Akerman LLP and Ariel E. Stern, Natalie L. Winslow, and Scott R. Lachman, Las Vegas, for Respondents.

BEFORE THE SUPREME COURT, HERNDON, LEE, and PARRAGUIRRE, JJ.

SUPREME COURT
OF
NEVADA

(O) 1947A

23-15688

*OPINION*

By the Court, PARRAGUIRRE, J.:

In this opinion, we clarify the extent to which a home equity line of credit agreement (HELOC) with a defined maturity date and closed draw period may be classified as a "negotiable instrument" pursuant to NRS 104.3104(1), as well as a "promissory note" under NRS 104.3104(5). We also address whether a property held in the name of its residents' trust is "owner-occupied" for purposes of NRS 107.015(6) and NRS 40.437(12)(c). In this case, these are threshold legal questions that inform whether a loan servicer and trustee were entitled to foreclose upon the borrowers' home due to the borrowers' failure to repay the funds provided to them under the terms of the HELOC.

We conclude that the district court correctly determined that the borrowers' HELOC is both a negotiable instrument and a promissory note, entitling the loan servicer and trustee to enforce the document under NRS Chapter 104 due to the borrowers' default. The district court erred, however, in finding that the borrowers' property, held in the name of their trust, is not owner-occupied and thus not subject to the statutory requirements pertaining to foreclosures affecting owner-occupied housing. Although the district court erred, we conclude that this error was harmless because the loan servicer and trustee demonstrated that they were entitled to both nonjudicial and judicial foreclosure even if the property is deemed owner-occupied housing. The record demonstrates that the loan servicer provided the borrowers with the information that would have otherwise been required under NRS 40.437 during the nonjudicial phase of the foreclosure and the borrowers, therefore, suffered no prejudice. In addition, the loan servicer and trustee demonstrated that the borrowers' claims

SUPREME COURT
OF
NEVADA


(O) 1947A

against them were without merit. We therefore affirm the district court's orders granting summary judgment and dismissal in favor of the loan servicer and trustee.

## FACTS AND PROCEDURAL HISTORY

In February 2007, appellants Evan S. Wishengrad and Beth Wishengrad obtained a HELOC through Bank of America, N.A. (BANA) in the principal amount of $495,000. The parties memorialized the HELOC's terms in a document referred to as the "Maximizer Agreement."

To secure repayment of the HELOC, the Wishengrads executed a deed of trust against their Las Vegas home. Unlike the Maximizer Agreement, the deed of trust was executed in the Wishengrads' capacity as trustees of the Evan & Beth Wishengrad Revocable Living Trust Dated May 23, 2004 (the Trust). Although the home is held in the name of the Trust, the Wishengrads have always resided at the home.

Subsequently, the Wishengrads withdrew the entire amount of funds available under the Maximizer Agreement and failed to pay it back. The Wishengrads last made a payment on the loan on February 14, 2013. The Wishengrads currently owe $525,973.77 in principal balance, interest, and additional late fees, escrow advances, and unpaid expenses.

BANA assigned the deed of trust to Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A (Wilmington). Carrington Mortgage Services, LLC (Carrington Mortgage) is Wilmington's loan servicer and attorney-in-fact for the Wishengrads' loan. Carrington Mortgage designated Carrington Foreclosure Services, LLC (Carrington Foreclosure) as trustee under the deed of trust in a substitution of trustee document recorded in April 2018.

SUPREME COURT
OF
NEVADA

(O) 1947A

3

In June 2017, after four years without payment under the Maximizer Agreement, Carrington Mortgage notified the Wishengrads that they were in default and facing foreclosure. Roughly one year later, in June 2018, Carrington Foreclosure mailed the Wishengrads a notice of default pursuant to NRS Chapter 107. Home Means Nevada, Inc., issued a foreclosure certificate on October 12, 2018. Carrington Foreclosure recorded a notice of trustee's sale on October 19, 2018, and mailed the notice to the Wishengrads five days later.

The Wishengrads sued Carrington Mortgage and Carrington Foreclosure (collectively Carrington) in November 2018. In their complaint, the Wishengrads asserted claims for declaratory relief/permanent injunction, intentional infliction of emotional distress (IIED), violation of NRS 107.028(7), and slander of title. After the district court dismissed the IIED and slander of title claims, Carrington answered and counterclaimed for judicial foreclosure in September 2019. The district court granted summary judgment to Carrington, concluding that Carrington is entitled to both judicial and nonjudicial foreclosure on the property. The Wishengrads now appeal this order, also challenging the court's dismissal of their IIED and slander of title claims.

## DISCUSSION

The Wishengrads' appeal rests heavily on their threshold arguments that (1) the Maximizer Agreement is not a negotiable instrument; (2) the Maximizer Agreement is not a promissory note; and (3) the home, although held under the Trust, is owner-occupied. The Wishengrads contend that if any of these three arguments are meritorious, then Carrington is not entitled to foreclose for various reasons discussed below.

SUPREME COURT
OF
NEVADA

(O) 1947A

4

In addressing these arguments, we affirm the district court's finding that the Maximizer Agreement is both a negotiable instrument and a promissory note. Accordingly, the relevant statutes of limitation associated with the prosecution of these instruments would apply here. While we also hold that the district court erred by finding that the home was not owner-occupied, this error was harmless, as Carrington complied with the applicable statutory requirements to foreclose on the property.

*Standard of review*

"This court reviews a district court's grant of summary judgment de novo, without deference to the findings of the lower court." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). "Summary judgment is appropriate . . . when the pleadings and other evidence on file demonstrate that no genuine issue [of] any material fact [exists] and the moving party is entitled to . . . judgment as a matter of law." *Id.* (internal quotation marks omitted). "[W]hen reviewing a motion for summary judgment, the evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party." *Id.*

*The Maximizer Agreement is a negotiable instrument*

The district court treated the Maximizer Agreement as a negotiable instrument governed by Article 3 of the Uniform Commercial Code (UCC)—codified in Nevada at NRS 104.3101 to NRS 104.3605. NRS 104.3104(1) defines "negotiable instrument" as follows:

> Except as otherwise provided in subsections 3 and 4, "negotiable instrument" means an *unconditional promise or order to pay a fixed amount of money*, with or without interest or other charges described in the promise or order, if it:

(a) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(b) Is payable on demand or at a definite time; and

(c) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:

(1) An undertaking or power to give, maintain or protect collateral to secure payment;

(2) An authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

(3) A waiver of the benefit of any law intended for the advantage or protection of an obligor.

(Emphasis added.)

The Wishengrads argue that the Maximizer Agreement is not a negotiable instrument because the agreement is essentially a revolving line of credit—akin to a credit card—rather than an unconditional promise to pay a fixed amount of money. They cite to paragraph 1 of the Maximizer Agreement, which states: "Your account is a revolving credit arrangement in which we make loans to you by advancing funds ('Advances') at your direction, allowing you to repay those Advances and take additional Advances, subject to the terms of this Agreement." Based on this language, the Wishengrads imply that they were only obligated to pay the "total of all Advances"—an uncertain amount—rather than a fixed sum.

We are not persuaded that the Maximizer Agreement is a revolving credit arrangement. Instead, we are convinced by the analysis in *Webster Bank NA v. Mutka*, where the Arizona Court of Appeals rejected the borrower's argument that his HELOC was akin to a credit card account

SUPREME COURT
OF
NEVADA

(O) 1947A

6

and that the statute of limitations began to accrue upon his first missed payment and thus barred the lender from suing for recovery. 481 P.3d 1173 (Ariz. Ct. App. 2021). As the *Mutka* court explained,

> The differences between a credit card account and a HELOC are more significant, however, than the similarities as they pertain to the statute of limitations. . . . [The borrower's] line of credit agreement specified a *maturity date* on which the entire debt would become due. Although the ultimate amount [the borrower] would borrow was not known until the end of the initial fifteen-year draw period, after that date, *the amount of the principal indebtedness would be fixed*, and the loan agreement set out a *repayment schedule.*

*Id.* at 1175 (emphases added) (footnote omitted).

Here, the Maximizer Agreement is substantially similar to the HELOC at issue in *Mutka. Cf. id.* at 1174. The Maximizer Agreement, executed on February 7, 2007, provided for a 10-year (120 month) "draw period" during which the Wishengrads could withdraw Advances up to the $495,000 limit. The Maximizer Agreement required the Wishengrads to make monthly minimum payments during the draw period, although the exact amount depended upon which repayment option the Wishengrads selected. The draw period would be followed by a 15-year "repayment period" (February 7, 2017-February 7, 2032) during which the Wishengrads would be required to pay down the outstanding balance on a monthly basis. The minimum payment due each month would be 1/180th of the outstanding loan balance, plus interest and other unpaid charges or late fees. All outstanding indebtedness would become due and payable upon the specified maturity date (February 7, 2032). Moreover, the Maximizer Agreement contained an acceleration clause, whereby the lender could seek repayment of the entire outstanding account balance in one payment if the

Wishengrads failed to make a minimum payment or breached any other repayment terms. Carrington expressly accelerated the loan upon filing a counterclaim for judicial foreclosure in September 2019, as the Wishengrads stopped making payments in 2013.

Accordingly, like in *Mutka*, the ultimate sum that the Wishengrads would borrow during the draw period was unknown, but at the close of the draw period in February 2017, that sum would become a fixed debt with principal due upon the maturity date in 15 years.[1] *Cf. id.* at 1175. *Mutka*'s reasoning persuades us that a HELOC with a closed draw period and specified maturity date, like the Maximizer Agreement, is an unconditional promise to pay a fixed amount of money pursuant to NRS 104.3104(1), rather than a revolving line of credit. As the remaining elements in NRS 104.3104(1)(a)-(c) are easily met by the Maximizer Agreement,[2] we further hold that the agreement is a negotiable instrument pursuant to NRS Chapter 104. On this basis, we conclude that the district court did not err in finding that Carrington, on behalf of Wilmington, was

---

[1]The Maximizer Agreement was also secured by the deed of trust, giving BANA and its successors in interest the incentive to accelerate the debt immediately by exercising a right to foreclosure in the event of default. This was true of the agreement at issue in *Mutka* as well, but is generally untrue of credit card debt. *Mutka*, 481 P.3d at 1175 ("Mutka's HELOC also was secured by real property, giving Webster Bank an additional incentive to collect on its debt through foreclosure.").

[2]The Maximizer Agreement is endorsed in blank and thus payable to bearer under NRS Chapter 104. NRS 104.3104(1)(a); *Edelstein v. Bank of N.Y. Mellon*, 128 Nev. 505, 522-23, 286 P.3d 249, 261 (2012). It is payable either on demand or at a definite time. NRS 104.3104(1)(b). It does not contain promises in addition to the payment of money. NRS 104.3104(1)(c).

entitled to enforce the Maximizer Agreement under NRS Chapter 104.[3] And contrary to the Wishengrads' position, the Maximizer Agreement is not subject to the notice requirements of NRS 106.300 to NRS 106.400 because it is not an encumbrance to secure future advances. *See generally* NRS 106.300-.400.[4]

Finally, Carrington's judicial foreclosure counterclaim is not time-barred under *Mutka*'s application of the statute of limitations to HELOCs. *Mutka* holds, and we agree, that the statute of limitations for debt owed under HELOC agreements with a defined maturity date begins to run—as to unpaid mature installments—upon the installment's due date, or—as to unmatured future installments—upon the date the lender exercises the optional acceleration clause. 481 P.3d at 1174. Given that

---

[3]Given that the Maximizer Agreement is payable to bearer under NRS Chapter 104, *see* note 2, *supra*, the person in possession of the Maximizer Agreement is entitled to payment. *See* NRS 104.3109(1)(a). As the record indicates that Carrington possesses the original Maximizer Agreement on behalf of Wilmington, Carrington is entitled to enforce it. *See Edelstein*, 128 Nev. at 524, 286 P.3d at 261-62 (holding that "where an agent of a secured party has physical possession of the note, the secured party has taken actual possession").

[4]Nor did the Maximizer Agreement expressly invoke NRS 106.300 to NRS 106.400. *See In re Resort at Summerlin Litigation*, 122 Nev. 177, 183, 127 P.3d 1076, 1080 (2006) ("NRS 106.350 clearly states that if a party desires to opt-in to the safe harbor provisions of NRS 106.300 to NRS 106.400, that party must expressly state that it is governed by the statutory scheme. Therefore, parties that do not make this express notation are not governed by the statutory scheme.").

Carrington counterclaimed for judicial foreclosure in 2019,[5] the action was timely under NRS 104.3118(1).[6]

*The Maximizer Agreement is a promissory note*

The district court also treated the Maximizer Agreement as a promissory note. Under NRS 104.3104(5), "[a negotiable] instrument is a 'note' if it is a promise." As discussed above, the Maximizer Agreement contains a promise to pay a fixed amount of money. Therefore, we hold that the Maximizer Agreement is a promissory note pursuant to NRS 104.3104(5). For the same reasons explained above, we reject the Wishengrads' argument that the Maximizer Agreement was not a promissory note because it did not require a certain or fixed amount. *See, e.g., Or.-Wash. Plywood Co. v. Comm'r of Internal Revenue,* 219 F.2d 883, 887 (9th Cir. 1955) (a promissory note is "[a] written promise to pay a certain sum of money, at a future time unconditionally" (quoting *Journal*

---

[5]We are not persuaded that Carrington's counterclaims are otherwise preserved by NRS 106.240, as that provision is instructive on when a lien, created by a deed of trust, expires, rather than explicitly setting forth a statute of limitation. Nonetheless, the record does not suggest that Carrington's lien expired prior to the expiration period set forth in NRS 106.240.

[6]NRS 104.3118(1) states that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within 6 years after the due date or dates stated in the note or, if a due date is accelerated, within 6 years after the accelerated due date." Thus, under NRS 104.3118(1) and *Mutka,* the limitations period for claims regarding the Wishengrads' unmatured and unpaid principal balance ($397,355.42) would accrue in 2025, six years after Carrington exercised the acceleration clause under the Maximizer Agreement. Claims regarding the Wishengrads' matured but unpaid interest installments due between September 2013 and September 2019 were also timely. We take no position with respect to unpaid interest installments that are potentially time-barred.

*Publ'g Co. v. Comm'r of Internal Revenue*, 3 T.C. 518, 523 (1944))). To the contrary, the amount that the Wishengrads withdrew under the agreement, which would become due upon maturity, would indeed be certain and fixed upon the close of the draw period on February 7, 2017.

*The home is owner-occupied*

The district court determined that the home was not owner-occupied and that, therefore, Carrington was not required to attach certain documents required by NRS 40.437 to proceed with judicial foreclosure. NRS 40.437 adopts the definition of "owner-occupied" contained in NRS 107.015. *See* NRS 40.437(12)(c). NRS 107.015 defines "[o]wner occupied housing" as "housing that is occupied by an owner as the owner's primary residence." NRS 107.015(6). The district court held that the home is not owner-occupied because it "is in the name of the Wishengrad Trust, not the Wishengrads" and "the Trust does not live in it."

We agree with the Wishengrads that the district court erred in so holding, as the court's conclusion is inconsistent with the law pertaining to trusts. The United States Supreme Court has clarified that "[t]raditionally, a trust was not considered a distinct legal entity, but a fiduciary relationship between multiple people" and that a trust "was not a thing that could be haled into court; legal proceedings involving the trust were brought by or against the trustees in their own name." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) (internal quotation marks omitted). In another case, the United States Court of Appeals for the Seventh Circuit explained that, with respect to property ownership, "[a] trustee has title to the assets of the trust, but the beneficiaries are the real owners because they are entitled to the income or other benefits that the assets of the trust yield, minus only the trustee's reasonable fee for managing the assets." *Wellpoint, Inc. v. Comm'r of*

*Internal Revenue*, 599 F.3d 641, 648 (7th Cir. 2010); *see also Hatcher v. S. Baptist Theological Seminary*, 632 S.W.2d 251, 252 (Ky. 1982) ("[W]hen property is held in trust the trustee holds the legal title and the beneficiary or beneficiaries are considered to be owners of the equitable title.").

Accordingly, the Trust at issue in this case is most accurately described as a fiduciary relationship between the settlors, trustees, and beneficiaries—all of whom are the Wishengrads—rather than a thing capable of residing in the home. The Wishengrads thus hold legal title to the home as trustees and are the equitable owners of the home as Trust beneficiaries. In turn, because the Wishengrads are owners of the home and occupy the home as their primary residence, the home is "owner-occupied" pursuant to NRS 107.015(6) and NRS 40.437(12)(c).

While the district court erred in finding otherwise, this error was harmless. *See Wyeth v. Rowatt*, 126 Nev. 446, 465, 244 P.3d 765, 778 (2010) (explaining that "[a]n error is harmless when it does not affect a party's substantial rights" and harmless error does not warrant reversal). First, although NRS 40.437 applies,[7] Carrington substantially complied with the statute's notice provisions by providing the Wishengrads with the

---

[7]The district court further erred in finding that NRS 40.437 did not apply because Carrington did not "commence" the action. *See* NRS 40.437(1) ("An action pursuant to NRS 40.430 affecting owner-occupied housing that is *commenced* in a court of competent jurisdiction is subject to the provisions of this section." (emphasis added)). Carrington initiated the claim for judicial foreclosure pursuant to NRS 40.430, albeit as a counterclaim.

SUPREME COURT
OF
NEVADA

(O) 1947A

12

requisite documentation during nonjudicial foreclosure proceedings,[8] thereby adequately apprising the Wishengrads of their counseling and mediation options upon foreclosure. *See Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. 470, 476, 255 P.3d 1275, 1278-79 (2011) ("Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute." (internal quotation marks omitted)). Consequently, the Wishengrads were not prejudiced by Carrington's failure to strictly comply with NRS 40.437. *See Schleining v. Cap One, Inc.*, 130 Nev. 323, 330, 326 P.3d 4, 8 (2014) (finding in the context of notice requirements that "substantial compliance is sufficient where actual notice occurs and there is no prejudice to the party entitled to notice"). Accordingly, albeit for different reasons, we conclude that the district court correctly determined that Carrington was entitled to judicial foreclosure.[9] *Cf. Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) (recognizing that this court may

---

[8]During nonjudicial foreclosure, Carrington provided contact information for the Wishengrads to negotiate a loan modification, *cf.* NRS 40.437(2)(a)(1), contact information for Nevada HUD-approved housing counseling agencies, *cf.* NRS 40.437(2)(a)(2), a Home Means Nevada mediation notice, *cf.* NRS 40.437(2)(a)(3), and a form upon which the Wishengrads could elect to enter or waive mediation, *cf.* NRS 40.437(2)(a)(4). While Carrington seemingly did not comply with NRS 40.437(2)(b), which would have required submission of a copy of the counterclaim to Home Means Nevada, Inc., Carrington persuasively argues that this action would have been meaningless because Home Means Nevada had already permitted nonjudicial foreclosure proceedings under NRS Chapter 107.

[9]We note that, while NRS 40.437 generally requires strict compliance, substantial compliance with NRS 40.437 was appropriate under these facts.

affirm the district court where it "reached the correct result, even if for the wrong reason").

Second, we agree with the Wishengrads that nonjudicial foreclosure was subject to NRS 107.085, which imposes heightened requirements upon trustees seeking to exercise the power of sale on a deed of trust concerning owner-occupied housing. NRS 107.085(1)(b). However, we disagree with the Wishengrads that Carrington failed to comply with NRS 107.085. The Wishengrads argue that NRS 107.085 requires that a copy of a promissory note be included in a foreclosure notice and that the Maximizer Agreement cannot satisfy this requirement because it is not a promissory note.[10] But because the Maximizer Agreement *is* a promissory note and Carrington included a copy of the Maximizer Agreement with the notice of default, NRS 107.085 is satisfied.

In sum, even though foreclosure on the home was subject to NRS 40.437 or NRS 107.085 as an owner-occupied property, the district court's error in failing to apply these statutes was ultimately harmless. *See Wyeth*, 126 Nev. at 465, 224 P.3d at 778.

## CONCLUSION

We agree with the district court that the Maximizer Agreement was both a negotiable instrument and a promissory note, but we conclude

---

[10]*See* NRS 107.085(3)(b) (A notice of foreclosure must be "[i]n substantially the following form. with the applicable telephone numbers and mailing addresses provided on the notice and, except as otherwise provided in subsection 4, a copy of the *promissory note* attached to the notice." (emphasis added)); NRS 107.085(4) ("The trustee shall cause all social security numbers to be redacted from the copy of the *promissory note* before it is attached to the notice pursuant to [NRS 107.085(3)(b)]." (emphasis added)).

SUPREME COURT
OF
NEVADA

(O) 1947A

that the court erred in finding that the home was not owner-occupied. To the extent the court erred, however, the error was harmless. We conclude that the Wishengrads' remaining arguments on appeal are without merit.[11] Accordingly, the district court correctly granted summary judgment to Carrington because the record indicates that Carrington is entitled to judicial foreclosure or, alternatively, to nonjudicial foreclosure as a matter of law. Finally, we are not persuaded that the district court erred in dismissing the Wishengrads' affirmative claims for IIED and slander of title. We thus affirm the district court.

_____, J.
Parraguirre

We concur:

_____, J.
Herndon

_____, J.
Lee

_____

[11]The deed of trust was properly assigned to Carrington, such that Carrington had standing to enforce it. Further, Carrington was not required to produce original or certified copies of the loan documents in order to foreclose. Summary judgment in favor of Carrington with respect to the Wishengrads' affirmative claims for declaratory and injunctive relief, and for violation of NRS 107.028(7), was also proper.